UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANTE S. GOWENS,

        Gowens,

v.                                                                     Case No. 10-10518
                                                                      Honorable Denise Page Hood

Sgt. ROOSEVELT TIDWELL, THE
CITY OF DETROIT, Lt. REGINA
ALLEN, Cmr. BRIAN ASTERE, Sgt.
PAMELA BOLDIN, Sgt. ERIC BUCY,
Chief ELLA BULLY-CUMMINGS,
Sgt. MARK CAMPEAU, Sgt. DURELLE
COOPER, Sgt. KIMBERLY GABRIEL,
Sgt. STEVIE HAYES, Ofr. JAMAL
HAMOOD, Sgt. HELEN HUNTER,
Cmr. HERBERT MOORLANT, Deputy
Chief JOYCE MOTLEY, Sgt. NAPOLEAN,
Lt. GASPER ROSSI, Sgt. MICHAEL
SCHMIT, Cmr. SERDA, Cmr. BRIAN R.
STAIR, Inv. SHEILA STALLINGS,
Sgt. LAURA STANTON, Lt. PASTELLA
WILLIAMS,
Jointly and Severally,
                      Defendants.

_____/

<u>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**</u>

**I.     BACKGROUND**

       The Plaintiff, Shante Gowens, filed the present action on February 5, 2010. In her complaint, she alleges 6 counts: Violation of Civil Rights under 42 U.S.C § 1983 Defendants Tidwell, Allen, Astere, Boldin, Bucy, Bully-Cummings, Campeaua, Cooper, GasperRossi, Hayes, Hamond, Moorland, Motely, Napoleon, Rossi, Schmit, Serda, Stair, Stanton, and Williams (Count I); Violations of Civil Rights under 42 U.S.C § 1983 Defendants City of Detroit

and Bully-Cummings (Count II); Violation of Civil Rights under 42 U.S.C § 1983 Defendants Astere, Gabriel, Hunter, Stair and Stallings (Count III); State Law Claim for Gross Negligence Defendants Astere, Gabriel, Hunter, Stair, and Stallings (Count IV); Sexual Harassment in violation of M.C.L. 37.2101, *et. seq* Defendants Astere, Gabriel, Hunter, Stair, Stallings, and City of Detroit (Count V); Assault and Battery Defendant Tidwell (Count VI).[1]

These claims arise from an incident that occurred on February 7, 2007 and the resulting investigation. That afternoon, Gowens was babysitting for a friend in the City of Detroit. Around midnight Donald Brown, a friend of Gowens, picked her up in order to drive her home. On the way to Gowens' home, Gowens and Brown were pulled over near the Chandler Park service drive. Gowens alleges an officer, later identified as Officer Tidwell, approached the car and asked for identification. When asked why he pulled the car over, Tidwell instructed Brown and Gowens to pull into the park.

After the car pulled into the park, Gowens alleges that Tidwell instructed Brown to perform oral sex on Gowens or they would receive a $500 ticket or go to jail. Gowens admits that she did not inquire into the nature of the ticket. Tidwell then got in the rear passenger seat of the car and repeated his request. Gowens then pulled down her pants and Brown performed oral sex on her. After approximately one minute, Gowens pushed Brown away. During the incident, Gowens alleges that Tidwell touched her breast and placed her hand over his genital area. Gowens does not claim at any time that Tidwell made physical threats.

Tidwell then instructed Gowens to step out of the car. Outside the car, Tidwell asked her if she "gave good oral?" Gowens replied "no". Tidwell then asked for Gowens' phone number.

---

[1] Defendants Tidwell, Astere, and Napoleon were not included in Defendants' motion for summary judgment.

She obliged him. Tidwell also asked her name. Gowens replied "Tina". Afterwards, Brown took Gowens home.

Once at home, Gowens told her sister about the incident. Shortly after, Tidwell called Gowens and was told to call back later. The next morning, she called the Ninth Precinct to report the incident. Gowens was told that someone would be sent out. Later that afternoon she called Internal Affairs, and spoke with Kimberly Gabriel. After speaking briefly over the phone, Gabriel went to Gowens' residence to take a formal statement. At that time, Gowens could not provide Gabriel with the officer's name. After Gabriel left, Gowens received another phone call from Tidwell, which her cousin recorded. Gowens later played the recording for Gabriel who gave Gowens a tape recorder to record future conversations with Tidwell. Gabriel also instructed Gowens to find out more information about the caller. Gowens claims she did not feel comfortable with recording the caller, but did so in order to help apprehend the officer. Tidwell called Gowens a fourth time and was "blown" off.

On February 9, 2007 Gowens participated in a photo identification line-up. She was unable to identify Tidwell as the offending officer. Tidwell was suspended on April 15, 2007 for activity stemming from unrelated criminal sexual conduct. Gowens testified at her deposition that she does not know any individual named defendant except for Gabriel and Tidwell and that she did not have any contact with any defendant except for Gabriel and Tidwell.

## II.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be granted if the movant shows there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The movant has the burden of showing that summary judgment is appropriate. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

(1970). Further, the court must consider evidence in the light most favorable to the nonmoving party. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). Summary judgment will "be granted against a party, who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corporation v. Catrett*, 477 U.S. 317, 391 (1986). A material fact is genuine, and therefore the case is not appropriate for summary judgment, if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 248 (1986).

### III.   ANALYSIS

#### A.   Liability under 42 U.S.C. §1983

To maintain an action under 42 U.S.C § 1983, a plaintiff must demonstrate that he or she was deprived of a right guaranteed by the Constitution or laws of the United States by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Municipalities may also be held liable under §1983. *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held vicariously liable for the actions of its employees. *Id*. at 691. A municipality may only be held responsible under §1983 for an official policy, practice, or custom that causes a constitutional injury. *Id*. at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). The policy must be the "moving force" behind the violation. *Monell*, 436 U.S. at 694. In fact, "a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.1987)). Absent the adoption of an official policy, a municipality may be liable if there is "persistent widespread practice of city officials or employees which is so common in law as to constitute a custom that fairly represents municipal policy." *Id*. at 691.

A municipality's failure to train employees may subject it to liability under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Liability is restricted to situations "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id*. at 388. Demonstrating that a particular officer's training is inadequate or that the training could have been better is insufficient to establish liability. *Canton*, 489 U.S. at 391. A municipality will be held liable only when a "failure to train reflects a 'deliberate' or 'conscious' choice" by the municipality. *Id*. at 389.

The Sixth Circuit has identified "at least two types of situations that would justify a conclusion of deliberate indifference in the failure to train police officers." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). The first is a "failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction." *Id*. The second is "where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Id*. Such deliberate indifference is demonstrated when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. In short, a plaintiff must prove that (1) the training program was inadequate, (2) the municipality's deliberate indifference caused the inadequacy, and (3) the inadequacy is closely related to or actually caused the plaintiff's injury. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Here, Gowens alleges that the City's "policies, practices, and customs...were the direct, motivating force, and proximate cause of Defendant Tidwell's unconstitutional [f]alse [a]rrest, sex assault and other unlawful actions." Specifically, Gowens contends that the City failed to

5

train its supervisors to detect illegal activity. Gowens argues that officers and supervisors ignored mandated changes to the Daily Activity Logs ("DALs"). Although DPD had issued DALs requiring more detailed information, officers continued to use the old form. (Pl.'s Ex. 8, Lt. Williams Depo at 24-25). Lt. Pastella Williams indicated that there was no way of determining from the DALs whether an officer was engaging in illegal activity unless the office admitted that he or she did something wrong. *Id.* at 14-15. Williams also never received training on how to audit the DALs. *Id.* at 26-27.

Gowens contends that DPD was aware of previous conduct like Defendant Tidwell's but did nothing to address this risk. Lt. Regina Allen reported that she knew about the sexually inappropriate actions of a previous officer but was not aware of any policy to address such behavior. (Pl.'s Ex. 7, Allen Depo. At 13-16). Lt. Allen also indicated that DPD took no action after becoming aware of Defendant Tidwell's actions. *Id.* at 18-19.

The Court finds, in light of Gowens' evidence, that there is sufficient evidence to create a genuine issue of material fact as to the adequacy of Defendant Tidwell's training. *Smith v. Yono*, 613 F. Supp. 50, 55 (E.D. Mich. 1985) (""Where a question of fact regarding the adequacy (or inadequacy) of police training exists, the Court agrees the issue would properly be reserved for jury determination.")  Summary judgment is inappropriate.

    **B.**    **Individual Defendants**

Supervisory liability will not attach based on a theory of vicarious liability. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id*.  *In Rizo v. Goode*, the Supreme Court

held that "[t]here must be a direct causal link between the acts of individual officers and the supervisory defendants." *Rizo v. Goode*, 423 U.S. 362, 370-71 (1976).

Gowens alleges that the following individual Defendants implicitly authorized, approved, or knowingly acquiesced in Tidwell's unconstitutional conduct: Lt. Regina Allen, Sgt. Pamela Boldin, Sgt. Eric Bucy, Chief Ella Bully-Cummings, Sgt. Mark Campeau, Sgt. Durelle Cooper, Sgt. Stevie Hayes, Ofr. Jamal Hamood, Sgt. Helen Hunter, Cmr. Herbet Moorland, Deputy Chief Joyce Motley, Lt. Gasper Rossi, Sgt. Michael Schmit, Cmr. Serda, Smr. Bruan R. Stair, Inv. Sheila Stallings, Sgt. Laura Stanton and Lt. Pastella Williams. Defendants argue that Gowens' deposition refutes that the named Defendants were involved. As to the internal affairs Defendants, Gowens alleges that they forced her to continue to contact Tidwell but failed to act on the information they received from the conversations.

Gowens does not provide any evidence that the named Defendants, excluding Tidwell and Gabriel, were directly and personally involved in the violation of Gowens' constitutional rights or somehow acquiescenced in the violation of those rights.

Gowens alleges that Gabriel forced Gowens to wear a wire and record the conversations. However, it is unclear from the deposition whether Gowens was forced to record the conversations against her will. Gowens has not produced any evidence that the Internal Affairs Defendants failed to act on the information. There does appear to be a question of material fact as to whether Gabriel coerced Gowens into recording the conversations.

The City contends that Gabriel should be dismissed from this action because she qualifies for qualified immunity. In civil actions arising from a government official's discretionary act, the official has qualified immunity from suit as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

7

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Government officials acting in their official capacity are entitled to qualified immunity if two factors are met: (1) whether the facts, taken in a light most favorable to the plaintiff, demonstrate a constitutional violation; and (2) whether the constitutional right is clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In sum, the relevant inquiry is whether a reasonable official in the defendant's position would understand their action to have violated a constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The burden falls on the defendant to prove that qualified immunity does not apply. *See Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

As previously stated, there is some question as to whether Gowens was coerced into having conversations with Tidwell. However, Gowens has not stated a clearly established constitutional right nor presented any evidence that the individual named Defendants were personally involved. The Court finds that Defendants Allen, Boldin, Bucy, Bully-Cummings, Campeau, Cooper, Hays, Hamood, Hunter, Moorland, Motley, Rossi, Schmit, Serda, Stair, Stallings, and Stanton are dismissed as to Count I, Count II and Count III.

### C.    Gross Negligence against Internal Affairs Defendants

Michigan law provides that government employees are immune from tort liability for injuries they caused while acting for a governmental agency if:

> (A) The…employee…is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (B) The governmental agency is engaged in the exercise or discharge or a governmental function.
>
> (C) The employee's… conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subsection, 'gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

MICH. COMP. LAWS § 691.1407(2). The Michigan Supreme Court has held that proximate cause refers to the cause "most immediate, efficient, and direct preceding an injury". *Robinson v. City of Detroit*, 462 Mich. 439, 459 (Mich. 2000).

Gowens alleges that Defendants Astere, Stair, Gabriel, Hunter, and Stallings (the "Internal Affairs Defendants") were grossly negligent by pushing Gowens to maintain contact with Tidwell. Gowens contends that such activity subjected her to further constitutional injury. As previously stated, it is not clear whether the Internal Affairs Defendants, particularly Gabriel, coerced Gowens into maintaining communication with Tidwell. Nevertheless, there is no evidence presented to show that these Defendants did not reasonably believe they were acting within the scope of their authority as police officers engaged in an investigation of criminal activity or that the conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury would result. Gowens was not in the presence of police officers when she continued the conversations. Although the Court recognizes such continual conduct could be seen as continuous injury to Gowens, it does not rise to gross negligence or a constitutional violation. The gross negligence claim is dismissed.

### D.     Collateral Action in State Court

Defendants allege that Gowens initiated a collateral sexual harassment action under the Michigan Elliot Larsen Civil Rights Act in Wayne County Circuit Court. Defendants provide no support for its argument. Gowens alleges that she does not have a pending collateral matter because the state action arises out of Defendant Tidwell's conduct and this action arises out of the actions taken by the Internal Affairs Defendants. Defendants are not entitled to dismissal of the sexual harassment claim.

### IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment **[Docket No. 51, filed March 7, 2011]** is **GRANTED IN PART**.

1) As to Count I, Defendants Lt. Regina ALLEN, Sgt. Pamela BOLDIN, Sgt. Eric BUCY, Chief Ella BULLY-CUMMINGS, Sgt. Mark CAMPEAU, Sgt. Durelle COOPER, Sgt. Stevie HAYES, Ofr. Jamal HAMOOD, Cmr. Herbet MOORLAND, Deputy Chief Joyce MOTLEY, Lt. Gasper ROSSI, Sgt. Michael SCHMIT, Cmr. SERDA, Cmr. Brian STAIR, Sgt. Laura STANTON and Lt. Pastella WILLIAMS are DISMISSED**.**

2) As to Count II, Chief Ella BULLY-CUMMINGS is DISMISSED.

3) Count III is DISMISSED in its entirety.

4) Count IV is DISMISSED in its entirety.

**IT IS FURTHER ORDERED** that the remaining Counts are as follows:

1) Count I – violation of 42 U.S.C. § 1983 against Defendants Sgt. Roosevelt TIDWELL, Cmr Brian ASTERE, and Sgt. NAPOLEAN

2) Count II – violation of 42 U.S.C. § 1983 against the CITY OF DETROIT

3) Count V – Sexual harassment against Defendants Cmr Brian ASTERE, Sgt. Kimberley GABRIEL, Sgt. Helen HUNTER , Cmr. Brian STAIR, Inv. Sheila STALLINGS  and CITY OF DEROIT.

4) Count VI – assault and battery against Defendant Sgt. Roosevelt TIDWELL.

                                                s/Denise Page Hood
                                                DENISE PAGE HOOD
DATED:  February 7, 2012                United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 7, 2012, by electronic and/or ordinary mail.

                                                    S/LaShawn R. Saulsberry
                                                    Case Manager