UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANTE S. GOWENS,

       Plaintiff,

v.                                                                                                      Case No. 10-10518
                                                         Honorable Denise Page Hood

Sgt. ROOSEVELT TIDWELL, THE
CITY OF DETROIT, Lt. REGINA
ALLEN, Cmr. BRIAN ASTERE, Sgt.
PAMELA BOLDIN, Sgt. ERIC BUCY,
Chief ELLA BULLY-CUMMINGS,
Sgt. MARK CAMPEAU, Sgt. DURELLE
COOPER, Sgt. KIMBERLY GABRIEL,
Sgt. STEVIE HAYES, Ofr. JAMAL
HAMOOD, Sgt. HELEN HUNTER,
Cmr. HERBERT MOORLANT, Deputy
Chief JOYCE MOTLEY, Sgt. NAPOLEAN,
Lt. GASPER ROSSI, Sgt. MICHAEL
SCHMIT, Cmr. SERDA, Cmr. BRIAN R.
STAIR, Inv. SHEILA STALLINGS,
Sgt. LAURA STANTON, Lt. PASTELLA
WILLIAMS, Jointly and Severally,

       Defendants.

_____/

## ORDER REGARDING VARIOUS MOTIONS IN LIMINE

**I.    BACKGROUND**

       This is a 18 U.S.C. § 1983 matter. Gowens alleges that after she and male companion David Brown went to Chandler Park they were approached by Sargent Roosevelt Tidwell. Tidwell forced Brown to perform oral sex on Gowens and for Gowens to grope Tidwell's genitals upon threat of ticket or jail time.

       During her deposition testimony, Gowens made the following admissions:

       •       Gowens and Brown only knew each other for a week prior to incident. She knew

    that Brown was married with children and was a drug dealer.

- Brown has been married on three prior occasions in temporary Muslim marriages. The marriages are to allow Muslim men to have sex without breaking Islamic law and are short in duration. There is usually an exchange of money before the marriage is consummated. Gowens admitted to being married for up to a year and as short as a few weeks after relatively short courtships.
- To meet men, Gowens has joined websites such as Muslima.com and Crushspot.com.
- Under the allias "Sheree Smith," Gowens had four separate cell phones and numbers.

## II. ANALYSIS

Pursuant to Federal Rule of Evidence 402 "[r]elevant evidence is admissible . . . . Irrelevant evidence is inadmissible." Evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without that evidence; and the fact is in consequence in determining the action." Fed. R. Evid. 401.

Evidence of other bad acts cannot be used to prove character in conformity, but may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). The trial court has broad discretion in determining whether similar act evidence is admissible. *United States v. Stout*, 509 F.3d 796 (6th Cir. 2007). Before admitting such evidence, the trial court must first determine whether there is sufficient evidence to allow the jury to make a reasonable finding, by a preponderance of the evidence, "that the act occurred and that the defendant was the actor." *Huddleston v. United States,* 485 U.S. 681, 690 (1988); *United States v. Gessa*, 971 F.2d 1257, 1261–62 (6th Cir. 1992). The Court must then assess whether the similar acts evidence is probative of a material issue other than character.

*Huddleston*, 485 U.S. at 686. The next inquiry is whether the evidence is relevant to a matter "in issue." *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991). The evidence "must deal with conduct substantially similar and reasonably near in time to the offenses" for which the defendant is charged. *Id.* The Court may nonetheless exclude the evidence if its probative value substantially outweighs the danger of unfair prejudice, confusion, or misleading the jury. Fed. R. Evid. 403.

### A. Gowen's Knowledge that Brown was Married With Children

Plaintiff Shante Gowens asks that the Court exclude any evidence that she knew that Mr. Brown was married with children. Gowens contends that the evidence is inadmissible hearsay and is more prejudicial than probative. Tidwell argues that the evidence is not hearsay because he would offer it to show Gowens' state of mind towards Brown. He further submits that the evidence will allow the jury to understand the full context of what happened between Tidwell and Gowens, which is especially critical given that it is Gowens' word against Tidwell's word.

The Court deems the evidence inadmissible. Even if Tidwell intends to offer the evidence to show Gowens' state of mind and not to prove that Brown was married with children, Gowens' state of mind towards Brown has no relevance to the issue before the jury: whether the Defendants violated Plaintiff's constitutional rights. Allowing the jury to consider the nature of Brown's relationship with Gowens would be extremely prejudicial because it would allow the jury to make an impermissible inference about Gowens based on the alleged extramarital affair. Whether Gowens was involved in an extramarital affair with Brown is irrelevant to whether the sexual assault occurred and whether it resulted in a violation of her constitutional rights. The Court excludes any evidence referring to Gowens' knowledge that Brown was married with children.

### B. Gowen's Sexual History

3

Gowens seeks exclusion of any evidence regarding her sexual history and proclivities. In her deposition, Gowens testified that she was involved in three temporary Muslim marriages where she exchanged money for sex, had cunnilingus performed on her, and used internet dating services such as Muslima.com to meet men.

Generally, evidence to prove that a victim engaged in sexual behavior or to show a victim's sexual predisposition is inadmissible in a civil trial. Fed. R. Evid. 412(a). However, "the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412(b)(2). Evidence of the victim's reputation is only admissible if the victim has placed reputation at issue. *Id.*

Tidwell argues that the evidence is relevant to damages because Gowens has not maintained employment or sought treatment for her mental distress. The City of Detroit also contends that evidence of Gowens' sexual history is probative of damages. The City asserts that "the degree of distress and discomfort [from sexual assault] would be very different, depending on whether the victim of such behavior were a virgin who had never engaged in sexual relations before, or someone who had done so numerous times, with numerous individuals" and bases this conclusion on "common sense." [Docket No. 85, Pg ID 994] The Court notes that the distress of sexual assault is rooted in the violation of one's body without consent and not in the number of sexual partners that a person has *chosen* by act of free will. To imply that the degree of mental distress a sexual assault victim experiences is largely impacted by the victim's *consensual* sexual history is a gross oversimplification of the myriad of considerations that may determine the impact of an assault on

4

a victim. The City of Detroit should be cautious when making such a flippant assertion, especially without any support, scientific or otherwise.

The City cites the Eastern District of Virginia case *Delaney v. City of Hampton*, 999 F.Supp. 794 (E.D. Va. 1997). In *Delaney*, the plaintiff sued her employer under Title VII and section 1983 for acts of sexual harassment. The plaintiff alleged that she suffered severe emotional distress as a result of the harassment. The City of Hampton sought admission of evidence of the plaintiff's history of prior sexual abuse as probative of liability and damages. The City of Hampton argued that the plaintiff had various other stressors in her life that may have been responsible for her mental condition. The court concluded that the evidence was admissible under Rule 412. The court noted that it was:

> clear from Delaney's psychiatric file that she has had numerous stressors in her life besides the alleged incident with Parker including a history of sexual abuse and other incidents such as an automobile accident. The City has experts who will testify that these stressors may have contributed to her current psychiatric problems.

*Delaney*, 999 F. Supp. at 796.

The situation here is different. There are no allegations that Gowens was the subject of prior sexual abuse or assault or other trauma that could have contributed to her mental distress before the alleged sexual assault. Rather the argument is that because Gowens was unemployed and received money from men for consensual acts of sex, any mental distress from an allegedly nonconsensual sexual act would be less. Again, Gowens' *voluntary* decisions to participate in temporary Muslim marriages, consensual acts of cunnilingus, and to join an online dating community have absolutely no bearing on whether a *nonconsensual* act of sexual assault caused mental distress. In addition, the evidence would be extremely prejudicial, painting Gowens as a promiscuous woman who engaged in sex for cash. The admission of such evidence creates a substantial likelihood that the jury will

5

assume that Gowens performed the sexual acts at issue in exchange for the benefit of not receiving a ticket. The evidence is excluded.

### C. Religious Affiliation and Prior Marriages

Gowens asks that evidence of her prior Muslim marriages and Islamic affiliations be excluded. Tidwell concedes that evidence of Gowens' religious beliefs is inadmissible for any purpose. *See* Fed. R. Evid. 601. Tidwell asserts that evidence of Gowens' prior marriages is probative of Gowens' honesty and to damages. The City of Detroit joins in Tidwell's objections noting that the temporary Muslim marriages appear to be "sham marriages." For the reasons stated above, evidence of Gowens' temporary marriages is excluded. Further, the evidence is not admissible under Rule 608(b), which allows impeachment of a witness by specific bad acts. Gowens' decision to engage in a marriage that is recognized by the Islamic faith is not indicative of untruthfulness just because the marriage is not recognized under state law. The Court excludes any evidence of Gowens's temporary marriages.

### D. Arrests Prior to and After Sexual Assault

Gowens asks that evidence of the assaultive behavior towards a teacher and her sister before the sexual assault and assaultive behavior towards a man after the sexual assault be excluded. Tidwell does not object to such relief if the same standard is applied to Tidwell's arrests. The City of Detroit did not file a response. Given that neither party has raised an objection, the Court grant Gowens' motion and excludes the evidence.

### E. Multiple Cell Phones and Cell Phone Numbers

6

Gowens seeks exclusion of any evidence of her obtaining multiple cell phones and cell phone numbers under an alias. The City of Detroit and Tidwell contend that the evidence is probative of Gowens's character for untruthfulness. The Court will allow the testimony.

Rule 608(b) allows a witness to be impeached with specific instances of misconduct. Gowens' obtaining four different cell phones and cell phone numbers under an alias is probative of her credibility. It shows that Gowens' had a motive to deceive the phone company and those to whom she talked on the phone. The danger that the jury may assume that Gowens' was involved in illegal activity is not substantially outweighed by the evidence's probative value of truthfulness. The Court allows the defense to impeach Gowens regarding the multiple cell phones and cell phone numbers under an alias.

### F. Expert Testimony

Gowens's intends to introduce the report and testimony of expert Dr. Gerald A. Shiener. The City and Tidwell ask for exclusion of the expert testimony because Gowens has failed to provide a summary of the expert's report as required by Federal Rule of Civil Procedure 26(a)(2)(B):

> Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.

Fed. R. Civ. P. 26(a)(2)(B). Absent a stipulation or order, an expert's written report must be disclosed "at least 90 days before the date set for trial or for the case to be ready for trial." Fed. R. Civ. P. 26(a)(2)(D). If a party fails to provide the report, the Court may exclude the information or witness absent a showing of no harm or that the failure was substantially justified. Fed. R. Civ. P. 37(c)(1). Gowens notes that trial was reset for May 6, 2013 and that she provided the report on January 31, 2013, which is several days over the 90-day requirement. However, this trial date was

7

adjounrned and is now rescheduled. At the hearing, the City withdrew its objection to the report on this basis. The Court will not exclude the expert testimony because Gowens has complied with Rule 26.

### G. Newspaper Articles

The City and Tidwell argue that Gowens's proposed admission of newspaper articles should be barred because newspaper articles are generally inadmissible as hearsay. However, a finding that the articles are inadmissible is premature at this point. A witness could use the articles for rehabilitation as a prior statement. Fed. R. Evid. 801(d)(1)(B). The articles may also be admissible as an admission. Fed. R. Evid. 801(d)(2). The articles may also qualify as an exception to the hearsay rule under Rule 803(18), which provides that a statement in a publication is admissible if the publication's reliability is established. Further, Gowens may choose to admit the articles not for the truth of the matter asserted within them. Gowens has not indicated for what purpose she intends to use the articles nor does the Court have the articles before it. Although Gowens will have to climb the hurdle of proving that each level of hearsay in the articles is admissible, the Court finds that a ruling as to the admissibility of the articles is premature at this time. The motions are denied without prejudice. Before the use of any such article at trial, Gowens must make an offer of proof outside the presence of the jury.

### H. Plea of Nolo Contendere and Incarceration

Tidwell asks that the Court to exclude evidence of his plea of nolo contendere. Federal Rule of Evidence 410 prohibits the use of a nolo contendere plea against the defendant in a civil matter. Fed. R. Evid. 410(a)(2). Rule 410 excludes a *plea* of nolo contendere but "convictions based on pleas of nolo contendere are admissible to prove the fact of conviction." *United States v. Adedoyin*,

369 F.3d 337, 344 (3d Cir. 2004); *see also Brewer v. City of Napa*, 210 F.3d 1093, 1096 (9th Cir. 2000) (finding that Rule 410 does not bar the admission of "evidence of felony convictions based on nolo contendere pleas . . . for impeachment purposes under Federal Rule of Evidence 609."); *Myers v. Sec'y of Health & Human Services*, 893 F.2d 840, 843 (6th Cir. 1990) (noting that Rule 410 "prohibit[s] use of 'a plea of nolo contendere,' not a conviction pursuant to a nolo plea."). "A judgment entered on a plea of nolo contendere adjudicates guilt with the same finality and force as a judgment entered pursuant to a guilty plea or a conviction following trial." *United States v. Williams*, 642 F.2d 136, 138 (5th Cir. 1981). Although Gowens cannot offer evidence of the plea of nolo contendere to prove that Tidwell was guilty of the crime charged, she can offer the conviction to demonstrate that the existence of the conviction itself. *See Adedoyin*, 369 F.3d at 334 (explaining that the prosecution offered proof of a conviction based on a nolo contender plea to show that the defendant was previously convicted of a felony that he did not disclose but not to show that he was guilty of the felony). In short, the proof of the conviction itself is admissible if it is offered to prove a matter that is collateral to whether Tidwell was actually guilty of the crime charged. Tidwell also argues, without support, that evidence of his prior arrests should be excluded. However, dependent on the nature of these arrests, they may be admissible under Rule 404(b).

Tidwell further contends that there should be no mention of his present incarceration or current residence. He asserts that his incarceration is not related to any matter at issue. Gowens counters that Tidwell was arrested for criminal sexual conduct, gross indecency, and misconduct in connection to the incident with Gowens and that various other charges were dismissed in exchange for a plea of nolo contendere. She argues that the evidence is admissible under Rule 404(b)(2) to show intent, preparation, plan, and *modus operandi*. Evidence of current incarceration may be

admissible, for purposes other than impeachment, "[if] such evidence is . . . relevant to a material issue and if its probative value outweighs the possibility of unfair prejudice." *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992).

Tidwell's incarceration and convictions based on nolo contendere pleas are irrelevant to any matter at issue here. These matters do not shed any further light on Tidwell's intent, plan, preparation, or *modus operandi*. Essentially, Gowens seeks to offer proof of Tidwell's incarceration and convictions as evidence of Tidwell's guilt for the crimes charged. Because the conviction for criminal sexual conduct, gross indecency, and misconduct in the office are connected to a plea of nolo contendere, the convictions are not the basis for an admission of guilt. Without an admission of guilt, Tidwell's intent, plan, preparation, or *modus operandi* to the crimes he was convicted of and incarcerated for are irrelevant. In addition, the Court finds the evidence more prejudicial than probative. It is likely that the jury will assume, based on the convictions and Tidwell's incarceration, that he is guilty of the previous offenses and further assume that Tidwell committed the acts alleged because they are of a similar nature. The Court will not allow evidence of Tidwell's incarceration or convictions based on a plea of nolo contendere.

However, as to whether the convictions or incarceration is admissible for the purpose of impeachment, the Court will reserve its decision on this issue until trial.

**III.   CONCLUSION**

Accordingly,

IT IS ORDERED that Plaintiff's Motion in Limine to Preclude Evidence Regarding Fellow Victim David Brown Being Married with Children at the Time of the Sexual Assault [Docket No. 79, filed January 8, 2013] is GRANTED.

10

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Preclude Evidence Regarding Her Prior Consensual Sexual History, Conduct and Proclivities [Docket No. 80, filed January 8, 2013] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Preclude Evidence Regarding Her Religious Affiliation and Prior Muslim Marriages [Docket No. 81, filed January 8, 2013] is GRANTED IN PART.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Preclude Evidence Regarding Plaintiff's Arrests Prior to and After Her Being Sexually Assaulted [Docket No. 82, filed January 8, 2013] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Preclude Evidence Regarding Her Sequentially Obtaining Multiple Cell Phones and Cell Phone Numbers Under an Alias [Docket No. 83, filed January 8, 2013] is DENIED.

IT IS FURTHER ORDERED that City of Detroit, Gabriel, Hunter, Stair, and Stallings' Motion in Limine [Docket No. 84, filed January 15, 2013] is DENIED.

IT IS FURTHER ORDERED that Tidwell's Motion in Limine [Docket No. 95, filed January 30, 2013] is GRANTED.

S/Denise Page Hood  
Denise Page Hood  
United States District Judge

Dated: May 23, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 23, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry  
Case Manager

11